Good morning. I'm Leanne Schell and I represent E I DuPont de Nemours & Co. Today we ask the Court simply to follow its decisions in Bain v. Georgia Gulf and Marcy v. Rowan. The Bain decision was decided by this Court in 2004 with Judge Smith on the panel and Marcy was decided four years later with Judge Dennis on the panel. Both of those cases held that unassessed penalties cannot be the proper subject of a viable claim under the False Claims Act. This Court's holdings in those cases were not legislatively overruled by the 2009 amendments to the False Claims Act and instead the holdings of this Court have been uniformly followed by courts around the country after the 2009 amendment without exception other than the District Court's opinion in this case. The District Court here is the only court that has not followed this Court's decisions. The decisions in Marcy and Bain are much like the underlying action here. In Bain, a case was brought alleging violations of the Clean Air Act. Mr. Bain claimed that his employer had been releasing vinyl chloride. The Court in Bain was asked to determine whether the alleged violation of the Clean Air Act, which imposed penalties for that kind of violation, was cognizable under the False Claims Act. The Court was presented with multiple views, one by Mr. Bain and one by Gulf and then a third by the United States as amicus. The Court addressed a decision by the Sixth Circuit in ATMI, also known as American Textile Manufacturers, in which the Sixth Circuit had taken a narrow view of the reverse false claims provision and found that a reverse false claim is not cognizable unless the amount owed to the government has been fixed. The Eighth Circuit fell in line with the Sixth in the Quick case, making that same narrow distinction. In Bain, this Court said, though, that it did not have to choose between ATMI's extreme on one end and the view espoused by the government on the other, but instead it found its own answer. And there the Court found that it's clear that when the statute involves only a potential obligation for the imposition of penalties, that obligation is not sufficient to give rise to a claim under the False Claims Act. In Marcy, the Court noted that Bain had accepted an intermediate position and made the same finding when there Mr. Marcy complained that his employer was dumping oil and other contaminants into the Gulf and had violated the Federal Water Pollution Control Act. Again, recognizing the limit in Bain, the Marcy Court found that because an environmental penalty statute was at issue and there had been no attempts by the agency to impose any penalty or to assess any fines, the claim was not the proper subject for a False Claims Act. Our case is much like those. In this case, Mr. Seminoe alleged that DuPont had leaks at its Burnside plant of sulfur dioxide and sulfur trioxide. Mr. Seminoe claimed that DuPont did not give notice to the EPA of those leaks under Section 8E of TSCA, the Toxic Substances Control Act. Section 8E requires manufacturers to give notice to the EPA of certain kinds of information identified as substantial risk information. Substantial risk information is information that a company learns that a substance presents a risk of harm to the environment or to human health where the EPA does not already have knowledge of that kind of information. If there is a violation of the notice provision, there is a potential for penalties under TSCA in Section 2615. What Congress did there is that it gave full control to the EPA to assess whether or not there had been a violation and then, if so, to impose penalties that could be civil or criminal, the EPA could choose from an array of options. Penalties would only be imposed after a required administrative procedure left only to the EPA. Now this Court... One of those options is to remit, isn't it? That's correct, Your Honor. The EPA could remit the penalties. It could choose to impose environmental requests instead of a penalty. It could impose a criminal penalty with no fine. And this Court in the Newell case, which is cited in our brief, this Court addressed the imposition by the EPA of a penalty under TSCA. And there this Court was doing so under the review that is outlined in the TSCA procedures itself, that once the EPA makes a decision, review doesn't go to the district court. The district court is bypassed altogether in this process. Review comes straight to the appellate court. And here the Court noted, just as you've indicated, Judge Smith, that not only does the EPA have vast discretion, which this Court should give deference to and to what it awards, but that it chooses from a whole host of remedies, including remitting the penalty and imposing an alternate economic request to the defendant. It considers... It also balances policy when making the decision as to what kind of penalty, if any, to enforce and to assess. Now, the revision that came in in 2009 did expand the Reverse False Claims Act provision by adding the definition of obligation. But the expansion did not go so far as to eliminate the limits set by this Court and all the others that penalty provisions still do not apply. The definition that was ushered in still required that there be an established duty to pay the government. The obligation, it wasn't as narrow as ATMI, where the obligation had to be fixed and definite at the time of the False Claims Act, but instead was slightly broader, but not eliminated penalty provisions altogether. And in fact, when the Senate Committee discussed the wording of the amendment, the Senate Committee specifically retained and added established duty to make sure that cases like Marcy and Boehm would that have followed this Court's decisions after. And briefly, if the Court were to vacate its decisions and adopt Mr. Siminoe's view here that statutory penalty provisions can be the subject of the False Claims Act, the results would be absurd. And we saw that play out in the district court below when we recognized that neither it nor the jury could assess a penalty under TSCA because that was reserved by Congress to the EPA. So then you have nothing to triple. There's no penalty. There's been no penalty to assess. And so the FCA Trouble Damages Court has been put ahead of the penalty horse. It just didn't make sense. So we urge this Court to follow its decisions in Marcy and Boehm and find that there is no viable False Claims Act claim set forth here. And once the Court does so, we then ask the Court to find that Mr. Siminoe has failed to set forth a viable retaliation claim under the False Claims Act. TSCA provided Mr. Siminoe with a retaliation remedy. Under TSCA, there is a provision that if an employee is investigating what it believes are violations of TSCA, it can then bring a retaliation claim. And TSCA sets forth the method to do that, and it goes through the Department of I didn't seem like you were yet at the period. You can at least finish the sentence. I'm sorry, Your Honor? Were you finished with the sentence? It looks like you stopped. I was close. I was just winding up to say that under the retaliation issue, we've cited the Court to the Hoyt case that says that if the claim isn't viable, the investigation of it is not in furtherance of a False Claims Act claim, and so it's not protected activity. Mr. Whitaker? May it please the Court, Henry Whitaker from the Department of Justice for the United States. We've supported the defendant's position in this case that unassessed fines and penalties are not a basis for reverse False Claims Act liability. I just want to stress that it is important to the government how the Court gets there to that conclusion, because it's certainly true that in the 2009 amendments to the False Claims Act, and indeed following a number of Court decisions before, Congress did indeed intend to make actionable a wide range of obligations that are indeed, in some sense, dependent on the exercise of some government discretion, and in particular, those obligations that arise where a defendant has some kind of preexisting payment relationship with the government, such as an obligation arising out of a lease, a contract, a grantor-grantee relationship, and the like. And so it is clear that there are certain contingent obligations that are actionable, and I'd point the Court to legislative history in which Congress, in the legislative history and indeed in the text, cited with approval the Tenth Circuit's decision in Barani, which recognizes that principle, that obligations that are contingent on the exercise of government discretion are actionable if they arise out of a payment relationship. And that language is reflected in the text of the Act, even if they are unfixed, they are nonetheless actionable. What would be a fair, in your view, a fair example of that proper application? Yeah, I mean, I think an example would be a Medicare overpayment. I mean, in the Medicare context, the way it works is the contractor, Medicare pays contractors throughout the year estimated payments, and the amount that a contractor actually owes may not be fixed until after there is an audit, let's say. So before the 2009 amendments, some contractors made the argument that, well, before the audit is actually conducted, our obligation to repay an overpayment is a contingent in some sense. And it's very clear in the definition of obligation that that's not a good argument. The definition of obligation clearly does include overpayments. Another example, Your Honor, would be just an obligation arising out of a government contract. Obviously, when there is a payment obligation that stems from a contract, that may be contingent in some sense on the government bringing a suit for breach of contract, let's say. That doesn't mean that it's not the kind of contingent obligation that may be actionable under the Reverse False Claims Act. And this Court indeed recognized that principle in Bain and Marcy in bracketing that kind of situation and not reaching that. And we'd urge the Court to take a similar approach today. And notably, I mean, in approving the 10th, and I mentioned the 10th Circuit's reasoning in Barani, which was approved, I think, by Congress in enacting the 2009 amendments. Barani cited this Court's decision in Bain. And so I think there is quite explicit evidence that Congress approved this Court of a line this Court drew in Bain. And again, this Court drew the same line, or a very similar line at least, to that line I'm urging the Court to draw today. However, I mean, though it is the definition of obligation is broad, we do think that it is not so broad so as to reach unassessed fines and penalties. We don't think that the False Claims Act is an all-purpose law enforcement tool. And if you just open a random provision of the Federal Criminal Code, let's say, you will see language that is just as mandatory as the civil penalty provision that is at issue here. It can't be the case that the False Claims Act permits enforcement of unenforced criminal statutes. And I think the reasoning would apply to the statute that is before the Court. And the distinction we'd urge the Court to draw there is that, I mean, there is a line of cases which we've cited, Supreme Court cases, that discuss the distinction between statutes that create penalties and statutes that create other kinds of financial consequences to conduct that is otherwise a tax and a penalty. And the distinguishing characteristic of a penalty, as the Supreme Court has indicated, is that it may attach financial consequences, but to conduct that Congress has defined as in some sense wrongful or unlawful, as opposed to a tax or another example in our view would be a customs duty. It's just attaching financial consequences to otherwise lawful conduct, such as the importation of goods. And we've brought, well, the parties have brought the Court's attention to the Victaulic case in the Third Circuit as an example of a statute that creates a monetary obligation to pay money to the government. A penalty statute, however, is different in that it simply creates an obligation to obey the law, to not engage in the conduct that the government has defined as wrongful. So that's sort of an analogous context, and we think that Congress has made a similar distinction in the False Claims Act, in the reverse provision of the False Claims Act. In earlier, well, history in this case, the government, well, did not weigh in in terms of before it got to that point of the government acting vis-a-vis the claim itself, and it otherwise didn't weigh in. So we get the denial of the ruling, we get a full trial, you know, we get the motion for reconsideration, and now we're up here before the Fifth Circuit, and now the government files its amicus. I take it the government's view today is different than what it would have been some time back. So, and you're concerned about maintaining the sort of efficacy of the position you articulated. So, was there something different about this case back when that the government, you know, sort of didn't weigh in? And when I say weigh in, I don't necessarily mean intervene as a party, but for purposes of clarification or whatever, in terms of the obligation you're talking about. Well, no, Your Honor, we attempted to file a statement of interest with the district court. It was denied? It was denied, yes, Your Honor. The district court denied us leave to file that statement and refused to consider our views. I mean, the defendant has actually moved to supplement the record on appeal with that statement. You can't even look at the statement in the district court docket. It's restricted from view, but you can, the defendant did attach that. I think the motion was filed May 19th, 2016. So, we did attempt to articulate this position in the district court, and that motion was denied. So, no, our position has not changed, Your Honor. Well, I stand corrected in saying that the government had not weighed in. That's helpful. But yeah, and we certainly would stand by that position and would urge the court to reverse on the narrow ground we've articulated, I've tried to articulate today in our brief. Thank you, sir. All right, Ms. Barney. May it please the court, Your Honors, I guess I will start with the last point that was made. The statement that I think was submitted, and I realize it's not part of the record, but since it's been discussed, I feel a need to respond, address the TSCA statute and the meaning of the TSCA statute. The legal issues that are being brought today, I do not believe were the subject of that statement. I'm sure Ms. Schell could correct me if that were the case, but I do not believe they were the arguments being made today. Your Honors. The fact that the government opposes your view in this case is fairly harmful to your position, it seems to me, because after all, the statute is designed for the benefit of the government, not for the benefit of relators. It's designed for the benefit, Your Honor, of the United States people, not the executive branch or the EPA or the Attorney General. And we're here to ask the court to enforce the laws written. Our opponents come before the court and advise that they do not want to apply the current laws written. The district court properly applied the plain, unambiguous language of the TSCA and False Claims Act statutes as written. The statutes are the law. Our opponents do not contend the statutes are ambiguous. Well, she had our cases in Marcy and Bain, where at least this wasn't on a clean slate, where there was no law. So, you know, I mean, that's the statute, but we had case law on it. It wasn't a clean slate, so. Your Honor, I'm glad you raised that because there was a lot of discussion about Bain and how it was, parts of it still survive. There were two limitations in Bain and my opponents are creating a bit of a red herring because they're only talking about the one that Bain recognized and didn't follow. And that was whether the obligation had to be absolutely fixed in the amount at the time the false statement was made. The fixed obligation portion of Bain is not really at issue anymore. The new definition clearly says that the penalty amount or the statutory obligation can be unfixed. But what my opponents have not discussed about American textiles analysis under the old law as recognized, Bain specifically recognizes at page 654. It was American textiles analysis that a defendant must owe to the government an obligation sufficiently certain to give rise to an action of debt at common law. That's this financial relationship concept that was used in Bain and that originated in American textile. So there were two limitations on the False Claims Act that Bain looked at. One was this relationship issue and that came from American textile. And the other was whether the amount of the obligation had to be fixed. And my opponents have focused today on the fixed, the fixing part. That's really irrelevant. The statute clearly says now that the amount does not have to be fixed. But that relationship standard is no longer the law. And Victaulic in the Third Circuit recently recognized on October 5th this year that that interpretation by American textile was too narrow and that the FCA new definition of obligation and the new false claim provision in 3729A1G have supplanted and broadened the definition that American textile used. That portion of Bain I submit is abrogated by the 2009 amendments. And that's the part that matters because I don't think anybody is trying to say that we would have to know the exact dollar amount of the penalty in order for there to be a reverse false claim. So the District Court properly found that the relator made out a prima facie case under the new FCA provision by showing that DuPont had an obligation, as newly defined, to pay money to the government and that DuPont knowingly concealed, avoided, or decreased such obligation. That's a limitation on this liability that is important. When you read all of these reverse false claims cases, they rarely get past Rule 9B on the fraud issue. That is the gatekeeper for this claim. Also the gatekeeper for this claim is mandatory penalties. What do you do with the fact that the administrator can remit? The duty to pay that's established by TSCA is in 2615A1. 2615A2 is the provision that talks about what the administrator can do. And that's in the scenario where you end up in front of the administrator. The person who's got the substantial risk information hasn't concealed it. He has given it to the administrator. He is in front of the administrator. That was not our case. DuPont concealed information all the way until after our trial. That's why we're going to have a new trial. So they were not in front of the agency waiting to have an administrative proceeding. The Newell case, I'll just mention while on that topic, that involved an administrative penalty under an EPA regulation. It did not involve a statutory penalty under the U.S. Code. And so I would just address that quickly. So getting back, I'm sorry Your Honor, your question was what do we do with remit? So 2615A1 establishes the mandatory, establishes the duty. And the Threum v. Browner case has recognized that the duty under TSCA arises at the time that the misconduct occurs, the time that the violation occurs. That is when the duty accrues under TSCA. Threum v. Browner decided in 1994 by the D.C. Circuit and has been followed by many cases since. So the duty is there under 2615A1. DuPont is contending that the only forum, the only venue in which you can determine the prerequisite facts for liability is at the EPA. There's no authority for that. And there's much authority that you can assess that in court. Threum v. Browner is one of those. So to get to your question, in 2615A2, the fixing of the penalty, that is where the discretion, the only discretion that arises under TSCA falls under 2615A2. And it is with respect to the amount of the penalty, which doesn't matter under the new reverse false claim because it doesn't have to be fixed. And the definition of the ability to remit, modify, or compromise is not intervening discretion. That's the important point. In Marcy v. Bain, they found that there was intervening discretion between the obligation to pay under the old financial, you know, common debt sort of assessment. There was intervening discretion. Now there's no intervening discretion before there is established duty to pay penalties under the statute. The penalties are mandatory. So the statute gives rise to a mandatory penalty and a duty to pay it. Yes, on the back end, after such violation has been demonstrated, the EPA, if you are in front of the EPA, has the ability to remit and modify the penalty. Only the EPA, only the agency has the authority to assess the penalty in the first place. Isn't that right? A court can't do that. Well, I'm not sure I agree with that, Your Honor. And 3M v. Browner actually speaks to that and says, of course, the court can enforce a penalty action in the first instance. You do not have to start in the agency. But we respectfully submit that we don't reach that right now. 2615A2 is about the fixing of the obligation in this case. It is not about the duty arising from statute that creates the obligation in the first place for purposes of this case. And remit means, according to Black's Law Dictionary, to give up, to pardon, to forgive, to annul, to remit a fine, sentence, or punishment. So that is something on the back end that someone could do if there were, after there's already an obligation to pay a penalty. But it does not get in between the conduct that constitutes the violation and the duty arising from statute. The new law wants to capture, I mean, obviously the purpose of the FCA is not to allow defrauding companies to conceal their obligations based on their own self-serving excuse that their duty to pay, although established by statute based on the information available to them, might be remitted, modified, or compromised. Once there's a duty to pay under a statute, which is in 2615A1, which is mandatory, as reflected by this Court's decision in Deepwater Horizon, once that duty is in place, if we can prove that they fraudulently concealed their duty to pay penalties, we have a reverse false claim case. So once a person is guilty of a violation that's an established violation in law, then it lends itself to a reverse false claims case if that person does not pay whatever is provided in the statute. Is that right? No, Your Honor. If that person knowingly conceals information to avoid the payment, that's what we would have to prove. Knowingly conceals his or her actions, is that? Right. And to avoid the payment. That's what we have to prove in the trial, is that they will, they have concealed information about that obligation. Now, Judge Dick did— I would like to examine it and tell us how it would work under the false claims. It has nothing to do with your case. My resourceful law clerk found a good example. There's a federal regulation that prohibits roller skating at the National Institutes of Health. And it says that a person who does that shall be fined under Title 18, imprisoned for not more than 30 days or both. Let's assume that a person engages in roller skating at the National Institute for Health where there are signs posted saying that you may not do that, and when approached by a guard, that person leaves the premises, tries to get away or is successful in getting away. Now, it seems to me that under your theory, that would lend itself to a reverse false act, a claim in which that person could be assessed a penalty of not less than $5,000 or three times the amount that's in Title 18. Because he or she has willfully violated the regulation that was clearly posted and has tried to get away with that obligation by leaving the premises. I guess the first issue would be, and I think it's the strongest one, is that it's not a statute. It's a regulation. This definition says establish duties arising from statute. And so I do not know and do not purport to suggest that every regulation would give rise to the kind of obligation that meets the statute. Our civil penalty is at the statutory level, and that's what's been very important about this case. And then, of course, you would have to prove concealment and the concealment of the payment obligation. And you would have to have a lawyer willing to spend lots and lots of time to take the case to court, and they would have to survive Rule 9b. And we would have to analyze the regulation. Well, it's the regulation that prohibits the roller skating, but it's the statute that says the person who violates that shall be fined or imprisoned. So it is pursuant to statute. Well, the fine and the criminal issue, I think, is separate. This is not a penal statute. The TSCA penalty is not a penal statute. And we've cited the court to the case of Atlas Roofing, which makes that clear. And so I don't think, as the government suggested, that every criminal statute is all of a sudden a basis for a false claims act. But I do think that we have to apply the law as written when a case comes before the court that meets the requirements and can meet Rule 9b and has mandatory penalties at the statutory level. And to answer your question specifically, we believe that the court could either refer the issue of fixing of the obligation to the EPA, which I believe was Judge Dick's indication at trial. It came to the jury verdict form, and she decided that she believed the jury was not going to do that, that she was going to refer it to the EPA under 2615A2. But the obligation exists. And so this court would have to undo Threum v. Browner, and it would have to say that the definition of obligation only means that some duties arising from statute, some established duties arising from statute, meet the definition, but not an established duty to pay arising from statute for this purpose. The Congress could have carved out civil penalties from the definition, but they did not. And they knew that the decisions out there that are left standing now after the abrogation of American Textile, the cases left standing are McGinnis, Pickens, and Sequoyah-Orange. They had held that environmental civil penalties, at least one of those, I think two cases, involved environmental penalties, could be the basis of a false claims case. That was back under the old law. And so American Textile disagreed with McGinnis and Pickens. It followed a case called Prower. And that's where the fork in the road was created. And American Textile has now been abrogated. So the cases on the books are McGinnis, Pickens, Sequoyah-Orange, and Victaulic. And Threum v. Browner, and this court's decision in Ray Deepwater Horizon, which found that the same penalty language that's in 2615A1, virtually the same, only the TSCA statute's a little stronger language, but found that that language afforded mandatory penalties. In fact, they cited a case, this court, and I believe Judge Dennis was on the panel, this court cited a 1975 case, U.S. v. GM, under the same statute, where the appellate court, when reviewing the EPA's assessment of the penalty, could only reduce the penalty to $1 because it was deemed to be a mandatory penalty amount. So Threum v. Browner has long said that the legal duty arises when you commit the violation. We would be undoing that, I believe, if we, in an effort to not meet the definition of obligation under the FCA. Thank you. The statute, I wanted to cite the court to authorities that support the fact that the court can be the one to hear these prerequisite facts that establish the duty and establish the FCA case. Interestingly, the government does not join in that argument. The government has not said the district courts have no authority to assess violations of TSCA. I have not seen that in their brief, and I did not hear it today. There is no exhaustion of remedies under the FCA. If Congress had wanted one, they could have written one. We have alerted the court to the Supreme Court Johnson v. Railway, where two federal statutes, one here being the FCA and one being TSCA section, the 2615A2 provision, can both provide related remedies directed to most of the same ends, and they may coexist and provide a choice among distinct and independent avenues, whether one is administrative or judicial. That is the Supreme Court Johnson v. Railway. So the fact that one could go to the EPA under TSCA doesn't mean it's required, and 3M v. Browner makes that clear. The statutes that would support this being done in federal court are 28 U.S.C. section 1355, grants district courts original jurisdiction over the recovery or enforcement of any penalty. TSCA's citizen supervision specifically says that the court, well, it specifically allows the courts to determine the prerequisite facts for TSCA violation. Jurisdiction over assessment doesn't necessarily, it means the court can entertain the matter perhaps to review an assessment, but it doesn't speak to whether the court can actually make the assessment. The statute does say original jurisdiction in 1355, 28 U.S.C. section 1355, and then TSCA citizen supervision makes it clear that this TSCA statute is not trying to supplant other remedies such as the FCA. 2619 says nothing in this section shall restrict any right which any person may have under any statute or common law to seek enforcement of TSCA or any rule or order under this chapter or to seek any other relief. So there is nothing that says you must go to the EPA, and that's especially so given that the federal agency who might decide to remit, modify, or compromise, or is the same federal agency, it might be too busy, underfunded, or otherwise disinclined to pursue the obligation owed to the United States, hence the FCA. The purpose of the FCA was to root out all types of fraudulent concealment of payment obligations to the government, and our case falls within the plain language of the statutes. All right. Thank you. Thank you, Jim. I think we have your argument. Back to you, Ms. Schell. Thank you. I'll start first with Judge Smith's question. Judge Smith, your question about the roller skating is spot on, and that's the reason why courts have feared that if a general duty to obey the law can give rise to an FCA violation, that the view would be way too broad, and one of the cases gives an example of someone going to the D-Day Museum for the IMAX movie and paying the student ticket admission rather than full price. Obviously, that kind of thing is well beyond what the False Claims Act is tended to address, and counsel's answer in response to you is incorrect. The term obligation under the FCA does include the relationship arising from statute or regulation. Further, going to the statement of the United States, counsel suggested that the United States does not take the position that the EPA has to make the decision in the first instance. That is incorrect. In the statement of interest with the United States filed below, it says specifically that the EPA considers that an obligation arising from a violation of TSCA does not occur unless and until there is a finding by the EPA that such a violation occurred and that the imposition of civil penalties are warranted. It goes on in that same vein and does address the issues here that the district court should not in the first instance be evaluating whether or not there was a violation of the statute that is uniquely within the purview of the EPA as delegated to it by Congress. The idea that the court would send some kind of a letter or directive to the EPA saying, we have found your statute violated, now impose a penalty and send it back and I'm going to triple it, is just well beyond the bounds of the law. The Browner case has been mentioned by counsel for Mr. Simoneau a number of times. The Browner case is simply a district court decision that addressed the statute of limitations. There's a statute that says that the United States can't bring an action for penalties after at the time of Browner it was four years. And so what Browner looked at and only looked at was what the statute of limitations was for the EPA to bring an action under TSCA. And the court there found that it was four years according to the statute and the four year period began to run at the time of the violation and did not extend indefinitely in time until the EPA might find out about a violation. That's the sum total of the holding in Browner and stretching it beyond that is improper. So again, we just ask that the court follow its decisions in Marcy and Bain, which continue to be good law, and to dismiss the case and reverse the decision of the district judge denying our summary judgment motion. Thank you. Thank you. All right. Thank you to counsel both sides for your briefing and argument that completes the argued cases for this morning. The panel stands in recess until 9 a.m. tomorrow.